# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN CHARLES POSTON,<br><br>                     Plaintiff,<br><br>     v.<br><br>GENERAL MOTORS, LLC, a limited liability company; DOES 1 through 10, inclusive,<br><br>                   Defendants. | Case No. 24-cv-0082-BAS-JLB<br><br>**ORDER:**<br>    1. **GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF No. 5), and**<br>    2. **DENYING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE (ECF No. 5-2)** |

This case is about an allegedly defective electric car purchased by the plaintiff and manufactured by the defendant. The plaintiff has sued the defendant car manufacturer, alleging breach of warranty claims under the Song-Beverly Act as well as claims for common-law fraud and violation of California's Unfair Competition Law ("UCL").

Presently before the Court is Defendant General Motors, LLC's ("GM" or "Defendant") Motion to Dismiss the Complaint of Plaintiff Steven Charles Poston ("Poston" or "Plaintiff"). (ECF No. 5.) Defendant moves to dismiss on the grounds that Plaintiff fails to plead a claim upon which relief may be granted. (*Id.*) Plaintiff opposes. (ECF No. 6.) Defendant replies. (ECF No. 7.) Defendant additionally requests judicial notice of publicly available information. (ECF No. 5-2.) Plaintiff does not oppose.

24cv0082

The Court finds the motions suitable for determination on the papers submitted and without oral argument.  Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1).  For the reasons set forth below, the Court **DENIES** Defendant's Request for Judicial Notice (ECF No. 5-2), and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss the Complaint (ECF No. 5).

## I.     BACKGROUND

Poston brings this automobile "lemon law" and fraud action against GM, alleging the vehicle Poston purchased, manufactured by GM, does not function as GM represented it would.  On either April 29, 2021, or September 6, 2020, Poston purchased a new 2021 Chevrolet Bolt from "Kearny Mesa Chevrolet, an authorized dealer and agent of [GM]."  (ECF No. 1-2, Ex. A ("Compl.") ¶¶ 4–6, 25.)  As part of that transaction, GM "issued an express warranty which would only be issued by [GM] as a result of the sale of the vehicle." (*Id.* ¶ 6.)  GM does "not sell vehicles directly to members of the general public." (*Id.*)  According to Poston, however, the sale of the Bolt by a GM dealership, coupled with the issuance of the express warranty, created a transactional and contractual relationship between GM and Poston such that the dealership was an agent of GM for the purpose of the transaction.  (*Id.*)  At the time Poston acquired the Bolt in 2020 or 2021, GM had advertised it "as a long range . . . electric vehicle on its website," and GM "dealership personnel assured Plaintiff of the long-range and safe nature of the vehicle." (*Id.* ¶ 26.)

When it announced production of the Bolt in October 2015, GM touted the Bolt as an affordable, long-range vehicle.  (*Id.* ¶ 14.)  Then, in a January 2016 press release, GM represented that the Bolt would have a battery range over 200 miles because GM had improved the battery's thermal operating performance.  (*Id.* ¶ 15.)

By December 2016, GM became aware of issues with the Bolt's battery and energy management systems; in response, GM instituted a battery exchange program to replace defective Bolt batteries.  (*Id.* ¶ 16.)  Despite this knowledge, GM began running

24cv0082

commercials in January 2017 that featured the range of the Bolt's battery and advertised the Bolt as a "long range" vehicle. (*Id.* ¶ 17.)

In October 2017, the National Highway Traffic Safety Administration ("NHTSA") "published a warning that overcharging lithium ion batteries, such as the battery in the Bolt, can result in spontaneous ignition." (*Id.* ¶ 18.)  In November 2017 and April 2018, GM created Bolt repair programs in response to "issues with low voltage batteries" and "to update the vehicle's software for a low voltage condition and reports of vehicles losing propulsion." (*Id.* ¶¶ 19–20.)  Then, in August 2018, GM "created another program related to the battery's software and its ability to monitor the charge of the battery." (*Id.* ¶ 22.)

A little over six months later, in March 2019, GM became aware of the first battery fire involving the Bolt.  (*Id.* ¶ 23.)  Despite GM's knowledge of the fire risk posed by charging the battery to full capacity, in October of that same year, GM held an event to address questions regarding the Bolt, and one of its employees and Bolt battery expert, Adam Piper, stated the following: "We engineered the battery system so that you can charge to 100% and maximize range.  Do whatever is best for your personal circumstances. If you want maximum range, charge to 100%." (*Id.* ¶ 24.)  By August 2020, GM "was aware of at least [twelve] fires" involving the Bolt.  (*Id.* ¶ 25.)  Yet, GM did not "disclose the battery issues to Plaintiff or alter its marketing campaign" for the Bolt.  (*Id.* ¶ 23)  The marketing materials for the 2020 Bolt pictured the vehicle as capable of being charged indoors in a garage.  (*Id.* ¶ 29.)

In October 2020, the NHTSA opened an investigation into the Bolt specifically.  (*Id.* ¶ 27.)  Then, on an unspecified date in 2021, GM issued a recall notice for the Bolt, "stating that its batteries may ignite when nearing a full charge." (*Id.* ¶ 30.)  Through this recall, GM "warned Plaintiff that the vehicle's charge should not exceed 90%, the battery mileage should not fall below seventy (70) miles remaining, and the vehicle should not be parked indoors overnight." (*Id.*)

In sum, GM "marketed the subject vehicle in [a] false and misleading manner by advertising it as safe and function[al]," when in fact it "is neither safe nor functional for

- 3 -

24cv0082

normal use due to the presence of defective and dangerous lithium-ion battery modules." (*Id.* ¶ 28.)  In fact, the vehicle's "batteries may ignite when they are either fully charged or fall below seventy (70) miles remaining mileage," and "[t]he vehicle also cannot be parked inside overnight due to fire risk."  (*Id.* ¶ 13.)  These alleged affirmative misrepresentations and fraudulent omissions by Defendant caused Poston to suffer injury in the form of anxiety, fear, and emotional distress.  (*Id.* ¶¶ 32, 44, 93.)

In his Complaint, Poston brings five claims against GM under California law: three claims of breach of warranties in violation of the Song-Beverly Consumer Warranty Act; a claim of common-law fraud; and a claim under California's UCL, California Business and Professions Code §§ 17200, *et seq.*.  (Compl. at 1.)

GM moves to dismiss Poston's fourth and fifth claims.  (ECF No. 5.)[1]  GM argues Poston fails to plead each element of his fraud claims and argues that the economic loss rule bars one of his theories of liability.  (*See id.*)  GM further argues that Poston fails to plead his UCL claims because he does not specifically state a predicating statute and fails to reference any established public policy GM's actions may have violated.  (*See id.*)

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6) Motion to Dismiss

General Motors brings this motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Under Rule 12(b)(6), the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Johnson v. Riverside*

---

[1] Defendant's motion to dismiss also questions whether the Complaint adequately alleges a Song-Beverly Act claim, (ECF No. 5 at 2 n.1), but the Court cautions Defendant that successive motions to dismiss under Rule 12(b)(6) are generally impermissible and, in the instant motion, Defendant did not move to dismiss Plaintiff's Song-Beverly Act claims.  *See* Rule 12(g)(2) (providing, in relevant part, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion").

*Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not accept conclusory allegations as true; rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged enough facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[ ] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

When a court dismisses a complaint, it must also decide whether to grant leave to amend. Under Rule 15(a)(2), granting leave to amend rests within the trial court's sound discretion. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). The Ninth

24cv0082

Circuit has held that leave to amend should be freely granted. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

### B.   Rule 9(b) Heightened Pleading Standard for Fraud

In analyzing the sufficiency of a claim for fraud, federal courts apply Rule 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "Rule 9(b) demands that the circumstances constituting the alleged fraud be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* at 1124 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). This means that allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004)).[2]

## III.   ANALYSIS

Plaintiff's opposition brief is largely unhelpful and does not address the vast majority of the arguments advanced by Defendant in its motion to dismiss. Apart from some argument regarding the economic loss rule and the existence of a transactional relationship between the parties, Plaintiff's Response recapitulates his Complaint and recites the applicable legal standards for Rule 12(b)(6) motions and Rule 9(b)'s particularity

---

[2] Defendant argues that Poston must satisfy California's additional fraud pleading requirements for a "corporate defendant" and cites to a California Court of Appeal case for support. (*See* ECF No. 5 at 5:25–6:1 (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (Cal. Ct. App. 1991)).) The court in *Tarmann* specifies additional requirements for pleading fraud against a corporation under California law. *See Tarmann*, 2 Cal. App. 4th at 157 (holding that, when suing a corporate defendant for fraud, a plaintiff must include "the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written"). However, the Ninth Circuit has held "that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985)). As a result, the Court only applies Rule 9(b)'s requirements in determining the sufficiency of Plaintiff's Complaint. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (holding that federal courts sitting in diversity shall apply state substantive law and federal procedural law).

24cv0082

requirement. (ECF No. 6.) Indeed, by his silence, Plaintiff appears to concede the merits of the bulk of Defendant's arguments. *See Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 235 n.1 (2019) (deeming an argument waived where the defendant failed to raise an issue in the opposition brief). Nonetheless, the Court will analyze whether Plaintiff has sufficiently alleged cognizable fraud and UCL claims.

### A.   Request for Judicial Notice

Defendant requests the Court take judicial notice that "the United States Environmental Protection Agency ('EPA') estimated that 2020–2022 model-year Chevrolet Bolts have a total range of 259 miles." (ECF No. 5-2 at 2:1–4.) "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

The Court declines to take judicial notice of these EPA estimates because it finds them unnecessary to resolve the instant motion. *See Ecological Rts. Found. v. PacifiCorp*, --- F. Supp. 3d ---, No. 23-CV-05179-JST, 2024 WL 3186566, at *4 (N.D. Cal. June 26, 2024) (denying request for judicial notice of documents the court did not consider in deciding the motion); *see also Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1039 (N.D. Cal. 2017) (same). Accordingly, Defendant's request for judicial notice is denied.

### B.   Fraud

Defendant avers that the Complaint does not allege fraud with the level of specificity required by Rule 9(b). In his Response, Plaintiff does not address the bulk of Defendant's arguments and instead claims only that a transactional relationship exists between Plaintiff

24cv0082

and Defendant and that Plaintiff should be given leave to amend his Complaint.  (ECF No. 6 at 7:23–8:25.[3])

"A cause of action for fraud requires proof of five elements: (1) misrepresentation; (2) knowledge of the statement's falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091 (C.D. Cal. 2017) (citing *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1184 (Cal. 1993); *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (Cal. 1996)).  To state a cognizable fraud claim, a plaintiff must allege facts to satisfy these elements with the requisite particularity and specificity of Rule 9(b).  *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020); *see also Kearns*, 567 F.3d at 1124.

As to the first element of his fraud claim, Plaintiff alleges fraud under two separate theories: affirmative misrepresentation and fraudulent concealment.  (Compl. ¶¶ 79–93.)

### 1.    Affirmative Misrepresentation

A plaintiff fails to allege affirmative misrepresentation in a consumer action for fraud where she fails to state what advertisements or sales materials specifically stated, when she was exposed to them, or which ones she found to be material.  *Kearns*, 567 F.3d at 1126; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 349 F. Supp. 3d 881, 914–15 (N.D. Cal. 2018) (holding fraud was not pleaded with sufficient particularity where a plaintiff claimed the vehicle she purchased "could not deliver the advertised combination of low emissions, high performance, and fuel economy," but she did not "identify when and where she saw this advertising, what type of advertising it was, or what the advertising actually represented," nor did she identify which statement(s) she relied upon in her decision to purchase the vehicle (citation omitted)).

---

[3] Plaintiff's Response does not contain page numbers.  (*See* ECF No. 6.)  The page numbers here cited by the Court refer to the page number provided on the PDF.  Plaintiff is cautioned that future failure to properly format filings may result in their rejection.

24cv0082

While Poston lays out GM employee, Adam Piper's, exact words in October of 2019 (Compl. ¶ 24), Poston fails to achieve that same level of specificity where he more broadly refers to "marketing . . . on GM's website . . . . that the vehicle had a long-range and was safe" (*Id.* ¶ 80). Crucially, whether these and similar alleged misrepresentations were specific or broad, Poston does not state when he was exposed to any of them and therefore insufficiently pleads fraud. *Kearns*, 567 F.3d at 1126. Poston also does not detail which misrepresentations he *found* to be material, rather, he conclusively states that they *were* material. (Compl. ¶¶ 34, 81, 86, 89, 131.) The misrepresentation's impact on him is the operative component here, and Poston fails to supply it.

By failing to plead the who, what, when, where, how of the alleged misrepresentations, Poston denies GM the opportunity to respond. *Kearns*, 567 F.3d at 1126. Thus, Plaintiff does not plead facts with sufficient particularity to allege fraud based on affirmative misrepresentation.

### 2.    Fraudulent Concealment

To state a claim for fraudulent concealment, a plaintiff must establish:

> (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.

*Graham v. Bank of Am., N.A.*, 172 Cal. Rptr. 3d 218, 228 (Cal. Ct. App. 2014) (citation omitted).

GM moves to dismiss the claim on the grounds that Plaintiff fails to plead GM's fraud with Rule 9(b)'s requisite specificity. (ECF No. 5 at 1:13–17.) GM also moves to dismiss this claim because Poston fails to allege facts plausibly showing that GM knew of and concealed any material facts before Plaintiff bought his Bolt. (*Id.* at 1:18–20.) Finally, GM argues Poston's fraudulent concealment claims must fail because they are barred by

24cv0082

California's economic loss rule and because Plaintiff cannot allege a transactional relationship with GM that would give rise to a duty to disclose. (*Id.* at 1:23–26, 11:8–12:9, 13:15–14:9.)

Some courts have used a relaxed Rule 9(b) standard where the claim rests on an alleged fraudulent concealment because, when the fraud is conducted by concealment, the plaintiff is inherently less able to plead the specific time, place, or content of the omission relative to an active misrepresentation. *See, e.g.*, *UMG Recordings, Inc. v. Glob. Eagle Ent.*, 117 F. Supp. 3d 1092, 1107 (C.D. Cal. 2015); *see also Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035, 1044 (N.D. Cal. 2011). However, even where this somewhat relaxed standard is applied, it does not eliminate Rule 9(b)'s requirements that the plaintiff plead with particularity all other elements of his claim. *See Kearns*, 567 F.3d at 1127.

Therefore, Plaintiff's claim of fraudulent concealment fails because Plaintiff does not allege with sufficient specificity the who, what, when, where of GM's fraudulent concealment. Fraudulent concealment is more than the simple nondisclosure of material facts. *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1166 (C.D. Cal. 2022). "To plead active concealment, [p]laintiffs must point to specific affirmative acts [d]efendants took 'in hiding, concealing[,] or covering up the matters complained of.'" *Id.* (quoting *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013). In his Complaint, Plaintiff does not plead facts pointing to any specific acts GM took to cover up the potential dangers of the Bolt battery or its shorter-than-quoted range. *Contra Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 594 (Cal. Ct. App. 2011), *as modified* (Dec. 28, 2011) (holding a complaint sufficiently alleged active concealment of a product defect where it alleged corporate directives to continue selling the defective product and "a customer service campaign designed to preclude consumer discovery" of the defect). Thus, Poston fails to plead the first element of fraudulent concealment—the concealment or suppression of a material fact—with the level of specificity required by Rule 9(b). Because the Court finds Poston failed to plead this first element, it need not reach GM's remaining arguments.

24cv0082

## C.    UCL Claim

The UCL prohibits "any unlawful, unfair[,] or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  The statute is "violated where a defendant's act or practice violates any of the [UCL's] prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

A plaintiff may pursue a claim under California's UCL via any or all of three prongs: the "unlawful" prong, which bars practices that are forbidden by any other law; the "unfair" prong, which bars unfair conduct; and the "fraudulent" prong, which bars practices that are likely to deceive the public.  *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1100 (N.D. Cal. 2021).

Poston claims that GM's conduct violated all three prongs of the UCL.  (Compl. ¶¶ 98–131.)  In its motion to dismiss, GM argues that the Complaint fails to adequately allege that GM violated these prongs.  (ECF No. 5 at 14:10–16:8.)  GM supports this argument by claiming that Rule 9(b)'s heightened pleading standards apply to claims for violations of the UCL.  (*See id.* at 4:19–22 (citing *Kearns*, 567 F.3d at 1125).)  This misrepresents the holding of *Kearns*, which required a pleading to satisfy Rule 9(b) where the claims were "grounded in fraud."  *See Kearns*, 567 F.3d at 1125.  Because Plaintiff alleges claims beyond fraud, including violations of the Song-Beverly Act, this Court shall apply Rule 9(b)'s heighted pleading standard only to his fraud claim, his UCL fraudulent practices claim, and his UCL unlawfulness claim to the extent it is predicated upon fraud. Poston's claims otherwise brought under the unfair and unlawful practices prongs of the UCL shall be evaluated under Rule 12(b)(6)'s plausibility standard.

### 1.    Unfair Business Practices

Plaintiff's Complaint alleges unfairness under the UCL by claiming Plaintiff's injury outweighs GM's reasons or justifications for its conduct. (Compl. ¶¶ 99–105.) GM moves to dismiss this claim on the grounds that the Complaint does not reference any established public policy that GM's actions have violated, or claim that the conduct is immoral, unethical, oppressive, or unscrupulous.  (ECF No. 5 at 16:1–4.)

- 11 -

GM's representation of the UCL's requirements is incomplete. "The UCL does not define the term 'unfair.' In fact, the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)). The California Supreme Court lately noted that courts currently apply three different tests to analyze UCL unfairness claims, but the court did not approve or disapprove of any. *Nationwide Biweekly Administration, Inc. v. Superior Court of Alameda County*, 462 P.3d 461, 472 n.10 (Cal. 2020). First, there is a line of cases applying the "balancing test," which courts apply in the consumer context and requires courts to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* at 471 n.9 (citation omitted). Second, there are cases applying the "tethering test," particularly in the competitor context, which requires that the wrongfulness of the conduct at issue "be tethered to specific constitutional, statutory[,] or regulatory provisions"—or the policy or spirit of such a law—even if there may be no precise violation of those provisions. *Id.* at 472 n.10 (citation omitted). And third, there is the "section 5 test," which is drawn from that provision of the Federal Trade Commission Act, and which asks whether there is substantial injury to consumers that is not outweighed by countervailing benefits to consumers and competition and is of a character that consumers themselves could not have reasonably avoided. *Id.*

Unlike a common-law fraudulent concealment claim, pleading a claim under the unfair prong of the UCL does not require the plaintiff to allege a duty to disclose. *See Torres v. Botanic Tonics, LLC*, --- F. Supp. 3d ---, No. 23-CV-01460-VC, 2023 WL 8852754, at *1 (N.D. Cal. Dec. 21, 2023) ("Depending on the facts, if a seller knows that a product poses a serious danger to its consumers and chooses to sell it without warning of the danger, that seller could potentially be liable under the unfair-practices prong even if there would be no liability for failure to disclose under any other statutory or common law cause of action."). Therefore, the Court need not analyze GM's arguments concerning the duty to disclose.

24cv0082

Given that this case appears in the consumer context where courts frequently apply the balancing test, Poston frames his claim around the balancing test. Sufficiently alleging a theory of liability under even one test allows Poston to plausibly state a claim for relief, so the Court, too, shall apply the balancing test. *Nationwide Biweekly Administration, Inc.*, 462 P.3d at 472 n.9.

Poston plausibly alleges that the gravity of his harm—the inadvertent purchase of a dangerous and underperforming vehicle that causes him anxiety—could outweigh the utility of GM's conduct in continuing to market and sell a vehicle with known defects. GM is incorrect when it argues Plaintiff fails to allege a basis for concluding his injury outweighs the reasons, justifications, and motives of GM. (ECF No. 5 at 16:5–7.) GM issued a vehicle recall notice and informed consumers that the vehicle should not be parked indoors overnight due to the danger it may ignite as the battery nears a full charge. (Compl. ¶ 30.) Plaintiff points out the possibility of vehicle will catch fire inherently presents a safety risk, and that, as a result, he "is forced to make unforeseen accommodations and take precautions that interfere with [his] normal and expected use of the vehicle." (*Id.* ¶ 31.) Further, Plaintiff alleges that the knowledge of the danger causes him "anxiety, fear[,] and emotional distress." (*Id.* ¶ 32.) It is therefore entirely plausible that such injuries outweigh GM's reasons, justifications, and motives for selling a faulty vehicle and thus the claim surmounts Rule 12(b)(6)'s pleading threshold. Plaintiff has sufficiently alleged a cause of action under the unfairness prong of the UCL.

### 2. Unlawful Business Practices

The unlawful prong of the UCL "'borrows' violations of other laws and treats them as unlawful practices." *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1139 (S.D. Cal. 2012) (citations omitted). The pleading must allege the way in which the alleged practices violated the "borrowed" law by "stat[ing] with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (Cal. Ct. App. 1993). The unlawful prong includes business practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-

24cv0082

made." *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1043–1044 (9th Cir. 2010) (citation omitted).  Where a plaintiff cannot state a claim under a "borrowed" law, he or she cannot state a claim under the UCL's unlawful prong either.  *See, e.g.*, *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim.").

GM argues that Plaintiff's claim under the unlawful prong is deficient because Poston does not identify an underlying statute to borrow from.  (ECF No. 5 at 14:17–23.) GM further argues that, insofar as Plaintiff's unlawful prong claim may be predicated upon GM's violation of the Song-Beverly Act, the claim must be dismissed because an alleged breach of warranty is a breach of contract, and a breach of contract is not an unlawful act for the purposes of the UCL.  (*Id.* at 14:24–15:13.)  As already noted, Poston did not respond to any of GM's arguments regarding his UCL claim.  (*See generally* ECF No. 6.)

Although the Court recognizes that Plaintiff does not specify upon which statute(s) he predicates his UCL unlawfulness claim, the Court shall move forward with its analysis based on Plaintiff's claims for common-law fraud and violations of the Song-Beverly Act.

To the extent Poston intends for his UCL claim to borrow from his insufficiently alleged fraud claims, his UCL claim under the unlawful prong fails because, as discussed above, he has not pled fraud with sufficient specificity.  *See supra* Section III.B.

To the extent Poston intends for his UCL claim to borrow from his claims of breach of express and implied warranties in violation of the Song-Beverly Act, it stands.  While GM cites district court cases holding that a UCL unlawfulness claim cannot be based on a breach of contract, (*see, e.g.*, ECF No. 5 at 14:26–15:3 (citing *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010))), here, the Song-Beverly Act provides for a statutory violation beyond mere breach of an express warranty or breach of a contract.

The Song-Beverly Act imposes additional requirements beyond those contractual duties "voluntarily undertaken by the parties to the contract, not imposed by state or federal

- 14 -

24cv0082

law." *Boland*, 685 F. Supp. 2d at 1110 (quoting *Smith v. Wells Fargo Bank, N.A.*, 38 Cal. Rptr. 3d 653, 672 (Cal. Ct. App. 2005), *as modified on denial of reh'g* (Jan. 26, 2006)). For instance, Plaintiff appears to make a breach of express warranty under the Song-Beverly Act claim pursuant to California Civil Code Section 1793.2(d)(1), which requires a manufacturer that "does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts" to "either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer." This provision creates a requirement beyond an express warranty or duty GM voluntarily contracted to undertake. Poston claims GM's actions violated this statutory requirement. He states that, "[a]lthough [GM] was unable to service or repair the [Plaintiff's car] to conform to the applicable express warranties after a reasonable number of attempts, [GM] failed to replace the [Plaintiff's car] or make restitution to [Poston] in accordance with the [Song-Beverly Act]." (Compl. ¶ 52.)

While breach of whatever express warranty GM gave to Plaintiff at the time of sale may be a breach of contract and thus insufficient to constitute breach of the UCL's unlawful prong on its own, Plaintiff's Complaint specifies provisions of the Song-Beverly Act that GM violated above and beyond breach of the express warranty. Therefore, this is exactly the kind of statutory breach for which the UCL's unlawfulness prong provides an additional cause of action. *Shroyer*, 622 F.3d at 1043–1044.

Without contemplating the sufficiency of Plaintiff's allegations under the Song-Beverly Act, because Defendant does not here challenge them, breach of the Song-Beverly's express warranty provision, Cal. Civ. Code § 1793.2, suffices as a statutory violation upon which a UCL unlawfulness claim may be predicated.

Further, to the extent Poston predicates his UCL unlawful prong claim on his claim of breach of implied warranties in violation of the Song-Beverly Act, that alleged violation may serve as a predicate for his UCL claim because it also constitutes a statutory breach. *See In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 797 (N.D. Cal. 2017) (denying a motion to dismiss a UCL unlawful claim where it was predicated on California's express

- 15 -

24cv0082

and implied warranty statutes, but granting the motion where it was based on breach of an express warranty); *see also Elias v. Hewlett-Packard Co.*, No. 12-cv-00421-LHK, 2014 WL 493034, at *11, n.12 (N.D. Cal. Feb. 5, 2014) (holding that the Song-Beverly Act creates an implied warranty, meaning when breach of that implied warranty is sufficiently alleged, it constitutes a statutory breach under the UCL and thus can be borrowed by the UCL unlawful prong). Thus, the Court will grant GM's motion to dismiss this claim only as it relates to Poston's fraud claim, but not as it relates to Plaintiff's claims under the Song-Beverly Act. (ECF No. 5.)

### 3. Fraudulent Business Practices

Distinct from common-law fraud, violation of the UCL fraudulent business practices prong requires only a showing that members of the public are likely to be deceived and that the plaintiff suffered economic injury as a result of the deception. *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1316 (S.D. Cal. 2014), *aff'd,* 816 F.3d 1170 (9th Cir. 2016). As noted above, however, Rule 9(b)'s heightened pleading standard applies to claims under the fraud prong of the UCL. *Kearns*, 567 F.3d at 1125. Because Poston failed to plead common-law fraud with sufficient specificity under Rule 9(b), his UCL fraud claim also fails and must be dismissed. *See supra* Section III.B.

## IV. CONCLUSION

Accordingly, the Court **DENIES** Defendant's Request for Judicial Notice. (ECF No. 5-2.) The Court further rules as follows on Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 5):

1. **GRANTED** as to Plaintiff's fraud claim;

2. **GRANTED IN PART** and **DENIED IN PART** as to Plaintiff's UCL Claim

    a. **DENIED** as to Plaintiff's claim under the unfair prong;

    b. **GRANTED** as to Plaintiff's claim under the fraudulent practices prong.

    c. **GRANTED** as to Plaintiff's claim under the unlawful prong insofar as it borrows from his insufficiently alleged fraud claim; and

24cv0082

d. **DENIED** as to Plaintiff's claim under the unlawful prong insofar as it relates to violations of the Song-Beverly Act.

To the extent the Court dismisses Plaintiff's claims, it does so **without prejudice**. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming that leave to amend should be freely granted). If Plaintiff wishes to file an Amended Complaint, he must do so on or before **July 31, 2024**. If Plaintiff fails to amend, Defendant is ordered to file its response on or before **August 7, 2024**.

**IT IS SO ORDERED.**

**DATED: July 22, 2024**

Hon. Cynthia Bashant
United States District Judge

- 17 -

24cv0082